UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA HAUTALA and STEVEN HAUTALA, | ) ) ) | CIV. 08-5003-JLV |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER ON DISCOVERY AND RELATED MATTERS |
| PROGRESSIVE DIRECT INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

Pending before the court are the defendant's motions to (1) amend or withdraw requests for admissions (Docket 51) and (2) bifurcate and stay portions of discovery (Docket 62), and plaintiffs' second motion to compel discovery (Docket 60). On February 3, 2010, the court heard and considered the arguments of counsel on the issues set forth in the order of January 12, 2010, (Docket 64) and requested the parties to provide additional information regarding the issues requiring resolution by the pending motions. On March 1, 2010, counsel submitted their joint report to the court (Docket 73) and then informally provided the court with correspondence dated February 22, 2010, which counsel agree provides further detail regarding the terms of their concessions and disagreements on discovery and the issues remaining for resolution. These matters are ripe for resolution.

**DEFENDANT'S MOTIONS**

1.   <u>MOTION TO AMEND OR WITHDRAW REQUESTS FOR ADMISSIONS</u>

Under the order granting motion to compel (Docket 49) entered by Chief Judge Karen E. Schreier on September 19, 2009, the court ordered that the "plaintiffs' Second Set of Requests for Admissions are hereby deemed admitted." To understand the reason for that order, it is necessary to examine the history of this case.

Plaintiffs' complaint dated December 18, 2007, in the Fourth Judicial Circuit Court of the state of South Dakota was removed to this court on January 14, 2008. (Docket 1). Defendant's answer dated January 18, 2009, was filed by Attorney Jack H. Hieb. (Docket 4). The court's scheduling order (Docket 7) was entered on February 29, 2008.

Just four months later, defendant's motion for summary judgment (Docket 13) was filed on June 26, 2008. By an order dated July 14, 2008, (Docket 18) Chief Judge Schreier allowed plaintiffs until August 8, 2008, to respond to defendant's motion for summary judgment. On August 8, 2008, plaintiffs filed their brief in resistance to defendant's motion for summary judgment and requested the court defer ruling under Fed. R. Civ. P. 56(f). (Docket 23). In plaintiffs' supporting affidavit, it was asserted that plaintiffs' discovery, including a first set of requests for admissions, interrogatories, and requests for production of documents had been served on defendant on

May 9, 2008. (Docket 21, ¶ 14). As of August 8, 2008, defendant had not answered any of that written discovery. <u>Id.</u> at ¶ 12. Plaintiffs' affidavit further indicated that defendant intended to file a motion to bifurcate and stay plaintiffs' bad faith claims, thereby avoiding the necessity of responding to the written discovery, but defendant never filed such a motion. <u>Id.</u> at ¶ 15.

On August 11, 2008, plaintiffs filed plaintiffs' responses and objections to defendant's statement of material facts in dispute and not in dispute. (Docket 24). Also filed with that submission were plaintiffs' first set of requests for admissions to defendant Progressive Direct Insurance Company dated May 9, 2008, (Docket 24-4) and a letter of January 18, 2008, from Attorney Hieb on behalf of defendant wherein he advised that since the action had been removed to federal court he was "going to simply ignore the written discovery requests . . . sent with the Summons and Complaint and assume that you are going to re-serve new interrogatories and requests for production of documents subsequent to the exchange of initial disclosures required by Rule 26(a)(1)." (Docket 24-2).

Defendant filed its reply brief in support of defendant's motion for summary judgment on August 18, 2008. (Docket 26). Contemporaneously with that brief, Attorney Hieb filed defendant's brief in response to plaintiffs' motion to defer ruling pursuant to Fed. R. Civ. P. 56(f) (Docket 27) together

with the affidavit of Jack H. Hieb. (Docket 28). Attached to that affidavit

was, among other things, plaintiffs' discovery of May 9, 2008, namely:

1.  Plaintiffs' first set of requests for admissions (Docket 28-1);

2.  Plaintiffs' first set of interrogatories to defendant (Docket 28-2);

3.  Plaintiffs' first set of requests for documents to defendant (Docket 28-3); and

4.  Plaintiffs' second set of requests of documents to defendant (Docket 28-4).

Attorney Hieb's affidavit asserted that he was under the impression that no

responses to the plaintiffs' discovery requests were required until

defendant's motion for summary judgment had been decided. (Docket 28 at

¶¶ 12, 13). That affidavit concludes if defendant's counsel had believed

responses were due to plaintiffs' discovery, defendant would have moved for

a protective order. <u>Id.</u> at ¶ 16.

In response to these submissions on September 2, 2008, Chief Judge

Schreier entered an order extending deadlines. (Docket 30). Then on

October 3, 2008, Chief Judge Schreier entered an order (Docket 31)

denying, without prejudice, defendant's motion for summary judgment and

allowing plaintiffs further discovery under Rule 56(f).

Plaintiffs filed their second motion to extend deadlines (Docket 32) on

October 16, 2008. Defendant did not oppose that motion. (Docket 33). On

November 10, 2008, Chief Judge Schreier entered a second order extending deadlines.  (Docket 34).

On December 15, 2008, plaintiffs filed their third motion to extend deadlines (Docket 35) and represented that defendant had no objections to the request.  On December 16, 2008, Chief Judge Schreier entered an order extending deadlines.  (Docket 36).

On February 10, 2009, plaintiffs filed their fourth motion to extend deadlines (Docket 37) asserting, among other things, that "Plaintiff's [sic] have not received Defendant's answers to discovery" and representing the defendant had no objection to this extension.  In response, on February 10, 2009, Chief Judge Schreier entered the fourth order extending deadlines. (Docket 38).

On March 12, 2009, plaintiffs filed their fifth motion to extend deadlines (Docket 39), again asserting that "Plaintiff's [sic] have not received Defendant's answers to discovery" and representing that the defendant had no objection to this extension.  On March 16, 2009, Chief Judge Schreier entered the fifth order extending deadlines.  (Docket 40).

On May 15, 2008, plaintiffs filed their sixth motion to extend deadlines.  (Docket 41).  In this motion, plaintiffs represented to the court that "Plaintiff's [sic] have not received Defendant's answers to discovery which has been outstanding since October 2008" and plaintiffs' counsel had

attempted contact with defendant's attorney about this motion but had received no response. On May 28, 2009, Chief Judge Schreier, without any response from defendant or its attorney of record, Mr. Hieb, entered the sixth order extending deadlines. (Docket 42).

On July 15, 2009, plaintiffs filed the seventh motion to extend deadlines. (Docket 43). Again, counsel represented to the court that "Plaintiff's [sic] have not received Defendant's answers to discovery which has been outstanding since October 2008," but this time indicated defendant's counsel had no objection to the requested extension. On July 16, 2009, Chief Judge Schreier entered the seventh order extending deadlines. (Docket 44). In this order, defendant was directed to "respond to plaintiffs' request for discovery by **August 3, 2009**. If it does not respond, plaintiffs shall file a motion to compel by **August 10, 2009**. There will be no further extensions of discovery deadlines unless a motion to compel discovery is made and granted." Id. (emphasis in original).

On August 10, 2009, plaintiffs filed their first motion to compel. (Docket 45). In this motion, plaintiffs asserted that all of their discovery, dated October 14, 2008, had been served and plaintiffs advised the court that defendant:

> 1.   Failed to produce discoverable documents . . . formally requested in Plaintiffs' Third Set of Interrogatories and Requests for Production of Documents (Docket 46-2); and

2.   Failed to produce [respond to] . . . Plaintiffs' Second
     Set of Requests for Admissions to Defendant (Docket
     46-1); and

3.   Failed to produce discoverable documents . . .
     formally requested in . . . Plaintiffs' Fourth Set of
     Requests for Production of Documents (Docket 46-3).

(Docket 45).

Defendant failed to respond to plaintiffs' first motion to compel and

thirty-five days later, on September 15, 2009, plaintiffs filed their motion for

default on plaintiffs' first motion to compel.  (Docket 47).  On September 17,

2009, Chief Judge Schreier entered an order granting plaintiffs' motion to

compel.  (Docket 49).  In that order, Chief Judge Schreier found, among

other things, that:

> All the discovery requests were dated October 14, 2008.
> Defendant has not responded to or objected to the discovery
> requests. Nor has defendant moved for a protective order.
> Plaintiffs did move for seven extensions of the discovery deadline
> because plaintiffs had not received defendant's responses to their
> discovery requests.  The court granted the extension, but in its
> order dated July 16, 2009, directed defendant to respond to
> plaintiffs' requests for discovery by August 3, 2009. Defendant did
> not meet this deadline and, as a result, plaintiffs moved to compel
> discovery on August 10, 2009.

Id.  Based upon those findings, Chief Judge Schreier's order granted the

motion to compel and gave direction to the defendant as follows:

> IT IS FURTHER ORDERED that defendant shall respond to
> plaintiffs' Third and Fourth Set of Interrogatories and Request for
> Production of Documents no later than **October 15, 2009**.

> IT IS FURTHER ORDERED that plaintiffs' Second Set of Requests for Admissions are hereby deemed admitted.
>
> IT IS FURTHER ORDERED that plaintiffs shall be entitled to reasonable attorney's fees for bringing this motion to compel. Plaintiffs shall file an affidavit setting forth the time spent on this motion and the hourly rate requested for attorney's fees by October 10, 2009.
> . . . .

Id. (emphasis in original). The order was electronically served on defendant's attorney, Mr. Hieb, on September 17, 2009.

On September 25, 2009, Attorney Lon Kouri filed a notice of appearance (Docket 50) indicating that he was appearing as co-counsel on behalf of the defendant. Then on September 28, 2009, defendant, through Attorney Kouri, filed the defendant's motion to amend or withdraw requests for admissions. (Docket 51). Defendant now acknowledges that it failed to satisfy the August 3, 2009, discovery deadline imposed by the court's order extending deadlines. See defendant's memorandum in support of defendant's motion to amend or withdraw responses to requests for admissions (second set). (Docket 52, p. 2). Defendant also admits that it did not respond to plaintiffs' August 10, 2009, motion to compel. Id.

In support of its motion to amend or withdraw, defendant asserts that "if deemed admitted [some of plaintiffs' thirty-two requests for admission], are arguably dispositive of this case." Id. at p. 3. Defendant identifies those particular requests for admission as:

19.    That Defendant owed UIM policy benefits to Plaintiff
       Andrea Hautala;

20.    That Defendant did withhold UIM benefits from
       Plaintiffs;

21.    That Defendant encourages its claims personnel to
       reduce and/or diminish the amount of money paid
       out to first party claimants for UM benefits;

22.    That Defendant encourages its claims personnel to
       reduce and/or diminish the amount of money paid
       out to first party claimants for auto policy property
       losses;

23.    That Defendant encourages its claims personnel to
       reduce and/or diminish the amount of money paid
       out to first party claimants for auto policy bodily
       injury losses;

24.    That Defendant has had a claims personnel
       compensation incentive program and/or programs in
       place as of June 29, 2005; and

26.    That Defendant has breached its duty of good faith
       dealing to its insured, Plaintiff, in the handling of the
       UIM claim from the June 29, 2005, accident.

Id. at pp. 3-4. Defendant then states "(t)o be clear, Progressive denies, in

whole or in part, many of Plaintiffs' Second Set of Request for Admissions,

and in particular, the above cited Requests." Id. at p. 4. Defendant's

representation in this denial is based on the original answer (Docket 4) and

defendant's summary judgment motion (Docket 15). Id.

    During the court hearing on February 3, 2010, and by the joint report

(Docket 73), plaintiff has agreed to allow defendant to withdraw the

admissions to requests for admissions number nineteen (19) through twenty-six (26), inclusive.  (Docket 73, p. 2).  The parties have also agreed that the admission to request for admission #11 should read as follows: "That Progressive Direct Insurance Company has denied Plaintiff Andrea Hautala the underinsured motorist coverage under her policy."  <u>Id.</u>  The parties continue to be in disagreement over the remainder of the responses to the requests for admissions.  <u>Id.</u>

2.  <u>MOTION TO BIFURCATE AND STAY PORTIONS OF DISCOVERY</u>

Defendant's motion to bifurcate and stay portions of discovery requests the court to suspend discovery related to plaintiffs' "bad faith," "punitive damages," "fraud/civil conspiracy," and "declaratory relief" causes of action until plaintiffs obtain a favorable judgment on the "breach of contract" cause of action.  (Docket 62).

**PLAINTIFFS' MOTION**

<u>SECOND MOTION TO COMPEL DISCOVERY</u>

Plaintiffs' second motion to compel discovery (Docket 60) seeks a court order requiring defendant to provide timely and responsive answers to plaintiffs' third set of interrogatories and fourth request for production of documents.  The motion is premised upon the order granting plaintiffs' motion to compel (Docket 49) entered by Chief Judge Schreier on September 19, 2009, and the nature of defendant's responses in its answers to

plaintiffs' third set of interrogatories (Docket 61-1) (which were served

undated on plaintiffs without signature from a corporate representative) and

defendant's objections and responses to plaintiffs' fourth set of requests for

documents (Docket 61-2). The joint report (Docket 73) and counsel's

correspondence of February 22, 2010, provide guidance to the court on this

issue.

## DISCUSSION

1.   <u>DEFENDANT'S MOTION TO AMEND OR WITHDRAW REQUESTS FOR ADMISSIONS</u>

Admissions are sought, first, to facilitate proof with respect to issues

that cannot be eliminated from the case and, second, to narrow the issues

in dispute. <u>Donovan v. Carls Drug Co.</u>, 703 F.2d 650, 652 (2d Cir. 1983)

(*overruled on other grounds by* <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S.

128, 133-34 (1988)). "The rule seeks to serve two important goals: truth-

seeking in litigation and efficiency in dispensing justice." <u>Conlon v. United

States</u>, 474 F.3d 616, 622 (9th Cir. 2007).

Defendant's motion requesting leave to amend or withdraw

admissions to plaintiffs' second set of requests for admissions is controlled

by Fed. R. Civ. P. 36(b). That section provides:

> A matter admitted under this rule is conclusively established
> unless the court, on motion, permits the admission to be
> withdrawn or amended. Subject to Rule 16(e), the court may
> permit withdrawal or amendment if it would promote the
> presentation of the merits of the action and if the court is not

persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits . . . .

Id.

The court has discretion to permit withdrawal or amendment of responses to requests for admissions. Federal Deposit Insurance Corporation v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994). As directed by Prusia, the court is required to consider the two-pronged test of Rule 36(b). Id. That test is summarized as follows:

1.   If the amendment will promote the presentation of the merits of the action; and

2.   If the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Id. (internal citation omitted). The court is not to focus on the defendant's "excuses for an erroneous admission." Id. at p. 640.

The first prong of this test requires the court to "consider whether permitting the amendment would have subserved the presentation of the merits of [the defense]." Id. Defendant represents that the admissions are "arguably dispositive of this case." (Docket 52, p. 3). Defendant asserts its statement of undisputed material facts (Docket 15) in support of its motion for summary judgment shows the identified requests for admission are disputed. (Docket 52, p. 4). Yet a comparison of defendant's statement of material facts and the identified requests for admission do not support that

assertion.  Defendant's statement of material facts focuses on the allegations of misleading the insured plaintiffs into purchasing or not purchasing particular coverages, while the identified requests for admission focus on the denial of benefits.  There is no contradiction between these two separate factual and legal issues.

Defendant asserts that it wants "(t)o be clear" with the court and "denies, in whole or in part, many of Plaintiffs' Second Set of Request for Admissions, and in particular, the above cited Requests."  (Docket 52, p. 4).  Yet defendant does not clarify which "many" of the other requests for admissions the defendant would deny in whole or in part.  Those other "many" court-admitted requests do not appear to be the focus of defendant's present motion to amend or withdraw.

Without a breach of contract claim, plaintiffs cannot prevail on their bad faith claims relating to the denial of benefits.  The court-ordered admissions in this case are directed toward the primary, critical factual and legal issues of bad faith.  The Prusia court looked to Davis v. Noufal, 142 F.R.D. 258 (D.D.C. 1992) to explain that if an "inaccurate admission" was to "completely preclude consideration of the merits," then allowing the amendment to the admissions should be permitted to foster  the presentation of the merits of the defense.  Prusia, 18 F.3d at 640 (summarizing Davis, 142 F.R.D. at 259).  It is the defendant's burden to

show the production of facts contrary to the "inaccurate admission," so that allowing the withdrawal or amendment "will serve the resolution of the merits of [defendant's] claims." Davis, 142 F.R.D. at 259.

The second prong of the Rule 36(b) test requires the court to determine whether the withdrawal would prejudice plaintiffs. As stated in Prusia, under Rule 36(b) prejudice "relates to the difficulty a party may face in proving its case" because of the now apparent need to "obtain evidence required to prove the matter that had been admitted." Id. at 640 (internal citation omitted). Prejudice does not include and is not created by the extra time or expense of gathering additional evidence. Id. It is not inconvenience but rather "the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses . . . ." which constitutes prejudice in this evaluation. Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995).

Prusia further instructs it is the burden of the party seeking to retain the admission to show how the withdrawal will prejudice him. Prusia, 18 F.3d at 640. In the instance case, plaintiffs have not articulated any specific, identifiable prejudice which would be done to the presentation of their case if defendant's motion was granted. Plaintiffs' primary argument against allowing withdrawal of the court-ordered admissions is centered on the defendant's total disregard of its obligation to comply with the previous orders of Chief Judge Schreier. (Docket 53, p. 3).

Other courts have looked beyond the two-prong test of Rule 36(b) and Prusia in determining what further, if any, discretion the trial court has in determining whether to grant a motion to withdraw admissions. In <u>Dukes v. South Carolina Insurance Company</u>, 770 F.2d 545 (5th Cir. 1985), the court looked at the plaintiffs' six-month failure to respond to a request for admission. <u>Id.</u> at 548. The court struck as untimely plaintiffs' responses which were filed outside of the discovery period. <u>Id.</u> In striking the untimely responses, the court "found that Dukes . . . had been evasive and dilatory throughout the litigation." <u>Id.</u> at 549. The circuit court found that the trial court did not abuse its discretion in striking the untimely responses. <u>Id.</u>

In <u>Conlon v. United States</u>, 474 F.3d 616 (9th Cir. 2007), the circuit court affirmed the district court's decision to deny plaintiff's motion to withdraw the statutorily imposed admissions under Rule 36(a). <u>Id.</u> at 624. While the decision was based primarily on the fact that trial was only eight days away at the time plaintiff's motion to withdraw was filed, the circuit court confirmed the discretionary authority of the district court to deny withdrawal even though the moving party satisfied the two-prong test of Rule 36(b). <u>Id.</u> After finding the Rule 36(b) test had been satisfied by plaintiff, the district court concluded that plaintiff "could not show good cause for his dilatory conduct [out of touch with his attorney]," and

furthermore, plaintiff "had fair warning of the consequences of his noncompliance." Id. at 625.

In West Bay Builders, Inc. v. United States, 80 Fed. Cl. 700 (Fed. Cl. 2008), the Court of Federal Claims analyzed Rule 36(b) of the Rules of United States Court of Federal Claims (RCFC), which is the counterpart of Fed. R. Civ. P. 36(b). Id. at 702. After discovery was completed the parties advised the court that the case could be resolved on motions for summary judgment. Id. at 701. Thereafter, plaintiff filed a motion to withdraw "deemed admissions" to defendant's requests for admissions asserting "inadvertences" because plaintiff's counsel had failed "to (1) forward these requests for admission to plaintiff, and (2) calendar a response date to [those] requests." Id. Plaintiff further claimed that the requests for admissions were "so vague and ambiguous . . . subject to more than one interpretation . . . and that 'withdrawal of [plaintiff's] automatic admission . . . will help clarify and aid in the presentation of the merits of the case.' " Id. The court of federal claims applied the two-prong test. Id. at 703-04.

The court then evaluated the "conflicting positions concerning the impact these admissions have upon [plaintiff's] case." Id. at 705. Plaintiff first claimed its attorney's "inadvertence" should allow plaintiff to be excused from the admissions. Id. at 706. This attentiveness issue was found by the court to be "wholly disingenuous" because it must be

presumed counsel read all of the pleadings as they were served and counsel "should have heard alarm bells, but either did not, or did so and did not care." Id. at 707 (internal citation omitted). The court found plaintiff did not even raise the issue for seven months and then waited an additional seven months before attempting to furnish untimely responses, "claiming its failure to respond was inadvertent." Id. at 708.

The other factor considered by the Court of Federal Claims in West Bay Builders was that the nonmoving party [defendant] documented for the court "several instances in which plaintiff's counsel has failed to timely respond to defendant." Id. In addition, the court's review disclosed that defendant filed "three unopposed motions to extend the discovery deadline. In each instance . . . enlargements of time were necessary due, in whole or large part, to delays caused by plaintiff." Id. at 708. "Courts have found that such 'serial tardiness' is inexcusable." Id. at 708-09 (citing Kelvin Cryosystems, Inc. v. Lightnin, 252 Fed. Appx. 469, 470-72 (3d Cir. 2007)) (denial of a motion to accept late answers to request for admissions because (1) plaintiff had been ordered four times over the course of six months to produce documents; (2) court finding the plaintiff's failure to comply with deadlines, despite the court's warning that any future untimeliness would result in waiver or sanctions; (3) responses to a first set of requests for admissions were served 69 days late; and (4) plaintiff still failed to respond

to the second set of requests for admissions). The claims court noted that a party's attorney "cannot insulate himself or his client from adverse results by burying his head in the sand." <u>West Bay</u>, 80 Fed. Cl. at 709. The court's ultimate conclusion was:

> [C]ounsel's clear disregard for his discovery obligation is characterized fairly as careless, dilatory, and negligent . . . there is a point at which the benefit derived from allowing withdrawal . . . of an admission is outweighed by the effect of an inevitable postponement of a final decision in the matter at a late hour . . . . the rules of the court [must] be construed and administered to secure the just, speedy, and inexpensive determination of every action. That point has been reached in this case, and the plaintiff must bear the consequences.

<u>Id.</u> at 709 (internal citations omitted).

On March 5, 2010, the Eighth Circuit Court of Appeals specifically addressed a district court's discretion to allow the withdrawal of admissions under Rule 36. <u>Quasius v. Schwan Food Company, et al.</u>, 596 F.3d 947 (8th Cir. 2010). A review of the facts in <u>Quasius</u> reveals that the non-responding party's conduct was very similar to, but less dilatory than, defendant's conduct in the present case.

On August 8, 2008, Schwan served Quasius with a number of discovery requests, including requests for admissions pursuant to Rule 36. <u>Id.</u> at 949. "Two of these requests bore directly on the ultimate question of Schwan's liability." <u>Id.</u> While the time for responding to these requests was pending, Schwan filed a motion to dismiss or, in the alternative, for

summary judgment.  Id.  In its reply memorandum in support of its

motions, defendant notified the court that the statutory time period to

respond under Rule 36(a)(3) had passed with no response from Quasius.  Id.

Quasius' counsel acknowledged during a hearing on October 10, 2009, that

"she had overlooked the requests for admission amidst the other discovery

requests."  Id. at 949-50.  The district court inquired if there were any

pending motions related to the requests for admission and Quasius' counsel

responded in the negative.  Id. at 950.  Later that same day, Quasius served

responses to the requests for admission on defendant, specifically denying

the two liability-related requests.  Id.  Nothing was filed with the court by

plaintiff on this issue.  Id.

In an order dated November 14, 2008, related to separate claims, the

court "declined . . . to grant summary judgment based on Quasius's

admissions.  Instead, the court gave Quasius thirty days, or until December

15, 2008, to file a motion to amend or withdraw his admissions."  Id.  "The

December 15 deadline passed without a motion by Quasius."  Id.  Counsel

for Schwan notified the court of the passing of this deadline and requested

entry of summary judgment based on Quasius' admissions.  Id.  Counsel for

Quasius did not respond to that letter.  Id.

On December 23, 2008, the court entered an order granting summary

judgment to Schwan.  Id.  The court found, in accordance with Rule

36(a)(3), when Qausius failed to respond within thirty days of service, the requests were admitted.  Id.  The court concluded "Quasius's failure to amend or withdraw his admission by motion 'conclusively established' that he lacked knowledge of any incidents of discrimination or retaliation, and that summary judgment in favor of Schwan was proper."  Id. (internal quotation in original).

The next day, counsel for Quasius requested that the court reconsider its decision and include the plaintiff's responses to the requests for admission in the court's analysis.  Id.  Counsel acknowledged not seeing opposing counsel's letter to the court regarding the passing of the December 15 deadline and asserted that the admissions were withdrawn by Quasius' service of his separate responses back on November 14, 2008.  Id.  The district court denied the request for reconsideration.  Id.

On appeal, the Quasius court considered Rule 36 in light of Quasius' declaration that the admissions "fully barred all claims."  Id.  The court reviewed the lower court's application of Rule 36 for "abuse of discretion" under Prusia.  Id.  The court concluded that after the expiration of the thirty-day response period, "the proper procedure for Quasius to 'withdraw or amend' the admissions was to file a motion with the court pursuant to Rule 36(b)."  Id. at 951 (referencing United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987)).  "That section provides that the court may

permit withdrawal or amendment if it would 'promote the presentation of the merits of the action' and not 'prejudice the requesting party in maintaining or defending the action on the merits.' " Id. (citing Rule 36(b)). This is the two-prong test of Prusia. 18 F.3d at 640.

After analyzing the law requiring the filing of a motion to withdraw, the Quasius court concluded that since no such motion was filed, the district court did not abuse its discretion in entering the order granting summary judgment. Quasius, 596 F.3d at 952. The court concurred with the district court's observation that " 'parties to a lawsuit must comply with rules of procedure' to ensure 'the orderly disposition of cases.' " Id. (quoting Kasuboski, 834 F.2d 1350).

In the present case, plaintiffs' requests for admissions were served on October 14, 2008. Responses to those requests were due on or about November 15, 2008, or the requests were deemed admitted under Rule 36(a)(3). Notwithstanding this clear statutory directive, defendant waited a total of nearly eleven months before filing the motion to amend or withdraw. Equally disruptive to the goal of just, speedy, and inexpensive litigation is defendant's failure to respond to the plaintiffs' requests for discovery when directed to do so by Chief Judge Schreier's order of July 16, 2009. By that time defendant's responses to plaintiffs' requests were already eight months past the date of admission imposed by Rule 36(a)(3). Even then, and

without any responsive pleading, defendant waited an additional two and a half months to file the motion to amend or withdraw. Against a deadline of thirty days for response under Rule 36(a)(3), seven orders extending deadlines, including a date certain deadline to respond by August 3, 2009, defendant did nothing under Rule 36(a), or otherwise, to seek relief from the admissions.

By the order of January 12, 2010, (Docket 64) and considering the two-prong test of Prusia, the court directed the defendant, for each separate plaintiffs' second request for admissions to which the defendant intended its motion to withdraw or amend to apply, to "state with specificity the 'actual fact' which defendant asserts is 'contrary to the admitted facts,' . . . and identify the witness or witnesses and documents which will support such 'actual fact.' " (Docket 64, pp. 2-3). In its response to the order (Docket 68), defendant identified admissions 9, 11-13, 17, 19-24, 26, 30 and 31 as being the subject of its motion to withdraw or amend. Id. at p. 1. Admission 11 is being amended and 19 through 26, inclusive, are being withdrawn by agreement of the parties. (Docket 73).

Therefore, the court need only apply the two-prong test of Prusia and Rule 36(b) to admissions 9, 12, 13, and 17. Examining each of defendant's individual responses (Docket 68) and defendant's response to the court's order (Docket 64) discloses the following:

Admission 9:  Defendant argued that there was no underinsured claim ("UIM") because of the contract of insurance and the admission would be contrary to the facts if Andrea Hautala was allowed "to make a demand for limits which are not available and which she had specifically declined . . . ."

•  Defendant presented no witnesses or documentation in support of its argument.

Admission 12:  Defendant argued that the admission is "contrary to the purpose of UIM coverage under the policy, as well as well-established South Dakota law . . . ."

•  Defendant presented no witnesses or documentation in support of its argument.

Admission 13:  Defendant argued that the admission "would acknowledge that Plaintiff is entitled to recover, 'the cost of medical care rendered as a result of the injuries Plaintiff received in the accident . . . up to the MPC limits.' "

•  Defendant references various documents in support of its argument, but presented none of them at the hearing.  In particular, defendant did not present any documentation showing that plaintiff had executed a written waiver of medical pay coverage as contemplated by South Dakota law.  S.D.C.L. § 58-23-7.

Admission 17:  Defendant asserted the same argument as with respect to Admission #13.

•  The court makes the same observations.

It is the finding of the court that defendant has failed to present any evidence to satisfy the first prong of the test under <u>Prusia</u>, that the " 'admitted' facts are contrary to the actual facts."  <u>Id.</u> (internal citations

omitted). "District courts have broad discretion to set filing deadlines and enforce local rules." <u>Reasonover v. St. Louis County</u>, 447 F.3d 569, 579 (8th Cir. 2006). "The district court had the power to establish reasonable times for the filing of documents and if those deadlines were not met, the court had the discretion to [impose consequences contemplated by the Federal Rules of Civil Procedure]." <u>Grandson v. Univ. of Minn.</u>, 272 F.3d 568, 574 (8th Cir. 2001) (internal citation omitted).

Having failed to satisfy the first prong of the test under <u>Prusia</u>, coupled with the defendant's failure to comply with Chief Judge Schreier's order (Docket 44), requires that defendant's motion to withdraw or amend admissions 9, 12, 13, and 17 must be denied. The same result applies to the remainder of the admissions not specifically addressed by defendant's motion.

<u>Prusia</u> specifically left the question of awarding sanctions to the nonmoving party as an issue to be decided by the district court. <u>Id.</u> at 640, fn. 2 ("We leave it to the district court . . . to determine whether awarding costs to the relying party is appropriate."). Fed. R. Civ. P. 37(b) specifically allows this court to issue "further just orders" which must include an order requiring "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the

failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(b)(2)(A) and (C).

Defendant "acknowledges it failed to meet [the discovery] deadline . . . ." which prompted the present motion to amend or withdraw.  (Docket 52, p. 2).  Counsel for defendant knew, or should have known, that Chief Judge Schreier's previous discovery orders were to be read and obeyed in a timely manner.  Regardless of whether the failure of the defendant to respond to those orders was simply a lack of attention to detail or a wilful disobedience of the presiding judge's orders, there is no reasonable or rational basis on which this court could find non-compliance with those orders to be substantially justified.  Under Rule 37(b)(2)(A) and (C), plaintiffs are entitled to an assessment of their reasonable expenses, including attorney's fees, in responding to defendant's motion to amend or withdraw.

2.    <u>DEFENDANT'S MOTION TO BIFURCATE AND  STAY PORTIONS OF DISCOVERY</u>

Defendant asserts that it will be unduly prejudiced by having to try in one proceeding the breach of contract claim and the dependent causes of action–bad faith, punitive damages, fraud/civil conspiracy, and declaratory relief.  (Docket 62).  Defendant further claims that it will be put at a disadvantage if the court does not bifurcate and stay discovery because its claims files and other proprietary business records will be discoverable

before plaintiffs obtain a favorable judgment on the "breach of contract" cause of action.  Id.

Fed. R. Civ. P. 42(b) established the criteria by which the district court should consider a motion to bifurcate trial.  "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more issues, claims . . . ."  Id.  It is wholly within the court's discretion to grant or deny a motion to bifurcate under Rule 42(b).  Athey v. Farmers Ins. Exchange, 234 F.3d 357, 362 (8th Cir. 2000).  The trial court is given broad discretion to determine whether to bifurcate a trial. See Rolscreen Co. v. Pella  Products of St. Louis, Inc., 64 F.3d 1202, 1209 (8th Cir. 1995).  Bifurcation of a trial is only appropriate, however, when it serves one of the purposes stated in Rule 42(b).  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 at 474 (2d ed. 1994).

The arguments raised by defendant are the same arguments which were before the court in Athey.  Id. at 361.  That court summarily rejected defendant's arguments.  Id. at 362 (citing Equal Employment Opportunity Comm'n v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998)).  In HBE Corp, the court examined subsection (a) of Rule 42 on consolidation.  That section provides that consolidation is appropriate "If actions before the court involve a common question of law or fact, the court may (1) join for . . . trial any

and all matters at issue . . . ; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Id. "All claims and issues sharing common aspects of law or fact may be consolidated to avoid unnecessary cost or delay, Fed.R.Civ.P. 42(a), [but] [c]onsolidation is inappropriate . . . if it leads to inefficiency, inconvenience, or unfair prejudice to a party. Fed.R.Civ.P. 42(b)." HBE Corp, 135 F.3d at 550-51. It is appropriate to consolidate claims and "avoid the inefficiency of separate trials involving related parties, witnesses, and evidence." Id. at 551.

Plaintiffs argue that bifurcating the trial on the breach of contract claim and the tort claims, particularly bad faith, will not serve judicial economy. Plaintiffs contend a trial on the bad faith claim would occur irrespective of the jury's determination on the breach of contract UIM claim because defendant has refused to tender any funds under the medical payment portion of plaintiffs' policy. Plaintiffs allege that this refusal to pay is separate and apart from the UIM claim and is based on bad faith. Consequently, a trial on the bad faith claim may be necessary on the medical payment coverage issue even if plaintiffs are not entitled to any coverage under the UIM portion of the policy. See Matter of Certification of a Question of Law from United States Dist. Ct., Dist. of S.D., W. Div., 399 N.W.2d 320, 322 (SD 1987) (a delay in processing or paying a claim can, in some circumstances, support a bad faith claim).

Similarly, if the evidence anticipated in a bifurcated trial would overlap, then bifurcation may actually hinder, rather than promote, judicial economy. It would be an "inadvisable use of judicial resources to segregate certain factual issues, which may require the recalling of witnesses, for a separate hearing." Transclean Corp. v. Bridgewood Services, Inc., 101 F. Supp. 2d 788, 792-93 (D. Minn. 2000). The "separation of issues for Trial is not to be routinely ordered . . . ." Fed. R. Civ. P. 42(b), advisory committee note. "[P]iecemeal litigation is not . . . favored, and bifurcation is inappropriate in cases where the facts are so inextricably interwoven that [separation] is impossible or at least manifestly unfair." Morse/Diesel, Inc. v. Fidelity and Deposit Company of Maryland, 763 F. Supp. 28, 35 (S.D.N.Y. 1991) (internal citations omitted).

By the joint report defendant has already agreed to participate in and allow discovery of its corporate materials relating to UIM claims and related documents. (Docket 73). The court agrees with plaintiffs that at least part of the bad faith claim should be presented to the jury at trial. The same witnesses and documents will be necessary for the breach of contract claim and the tort claims. Bifurcation in this case will not promote judicial economy, expedite resolution of claims, or serve any other purpose stated in Rule 42(b). Accordingly, the court denies defendant's motion to bifurcate.

3.     <u>PLAINTIFF'S SECOND MOTION TO COMPEL</u>

Chief Judge Schreier's order granting motion to compel (Docket 49) specifically required defendant to "respond to plaintiffs' Third and Fourth Set of Interrogatories and Request for Production of Documents no later than October 15, 2009." <u>Id.</u> Defendant filed its answers to plaintiffs' third set of interrogatories and requests for documents on October 15, 2009. (Docket 61-1). Those answers were not signed and, instead of providing substantive answers, defendant's responses to nearly every one the nineteen interrogatories and seventy-five requests for documents contained one or more of the following objections:

- Defendant objects to the foregoing Interrogatory on the grounds that it is overly broad, harassing, seeks information that is irrelevant, beyond the scope of discovery, and not reasonably calculated to lead to the discovery of admissible evidence.

- Defendant further objects as the interrogatory seeks information that is confidential, proprietary, protected by attorney client privilege and work product doctrine.
- To the extent this Request seeks information which is a matter of public record, the information is equally available to Plaintiff.

<u>Id.</u> Defendant filed its responses to plaintiffs' fourth set of requests for documents on October 15, 2009. (Docket 61-2). Rather than provide substantive responses or produce documents, defendant asserted the same objections and included a requirement that the court would have to enter a confidentiality agreement and protective order before any documents would be produced. <u>Id.</u> Defendant's responses sought to limit its production of

documents to the "2005 time-period" rather than the ten (10) year period

framed in plaintiffs' request for production of documents.  Id.

Plaintiffs have complied with Fed. R. Civ. P. 37(a)(1) and D.S.D. Civ.

LR 37.1 by attempting, in good faith, to resolve their differences with

defendant before bringing the second motion to compel before the court.

(Docket 61).

"Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized

as a discovery rule which is liberal in scope and interpretation, extending to

those matters which are relevant and reasonably calculated to lead to the

discovery of admissible evidence."  Hofer v. Mack Trucks, Inc., 981 F.2d

377, 380 (8th Cir. 1992).  "While the standard of relevance in the context of

discovery is broader than in the context of admissibility (Rule 26(b)) clearly

states that inadmissibility is no grounds for objection to discovery. . . ."  Id.

(referencing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51

(1978)).  A party seeking discovery is merely required to make a threshold

showing of relevance, which is more relaxed than the showing required for

relevance in the context of admissibility.  Id. at 351.  The party resisting

production of discovery bears the burden of establishing lack of relevancy or

that complying with the request would be unduly burdensome.  See St. Paul

Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D.

Iowa 2000).  "[T]he mere statement . . . that [an] interrogatory [or request for

production] was 'overly broad, burdensome, oppressive or irrelevant' is not adequate to voice a successful objection." <u>Id.</u> (internal citation omitted). "[T]he party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive." <u>Id.</u> at 512 (internal citation omitted). "Because the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive is not in itself a reason for refusing to order discovery which is otherwise appropriate." <u>In re Folding Carton Antitrust Litigation</u>, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (internal citation omitted). "[T]he fact that answering the interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis to object." <u>Burns v. Imagine Films Entertainment, Inc.</u>, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (internal citation omitted). Defendant has not met its "burden under [Rule 33(b)(4)] of making a specific showing of reasons why the interrogatories [and requests for documents] should not be answered or documents not produced where [it] merely made conclusory objections." <u>Id.</u>

Plaintiffs' interrogatories and requests for production were initially served on defendant on October 14, 2008. (Dockets 46-2 and 46-3). Thereafter, Chief Judge Schreier entered an order granting the motion to

compel and requiring defendant's responses no later than October 15, 2009. (Docket 49). Defendant failed to respond to discovery for a year and when compelled to do so by the court then interposed improper objections and continued to refuse to produce discovery unless a protective order was entered. Under Rule 26(c)(1), it is the defendant's duty to move for a protective order. Rather than petition the court for a protective order, defendant simply refused to proceed, thus depriving plaintiff of meaningful discovery.

After the court's hearing on February 3, 2010, defendant now acknowledges its obligation and responsibility to provide substantially all of the discovery requested by plaintiffs. (Docket 73). Only after the hearing did defendant exchange proposed protective orders with plaintiffs' counsel so that the court's protective order could be entered on March 11, 2010. (Docket 74).

Fed. R. Civ. P. 37(a)(5)(A) specifically authorizes, and in fact requires, the court to award reasonable expenses, including attorney's fees, to plaintiffs for bringing on for hearing and prevailing on a motion to compel discovery. But for plaintiffs' second motion to compel, it is clear that defendant would not have changed its stance on discovery. Plaintiff's second motion to compel is granted. Plaintiffs are entitled to an award of their reasonable expenses, including attorney's fees, together with the

statutory South Dakota 6 percent sales tax on fees, against the defendant for the time and expense of bringing the second motion to compel before the court.

## ORDER

Based upon the above and foregoing, it is hereby

ORDERED that defendant's motion to amend or withdraw requests for admissions (Docket 51) is denied in part and granted in part.

IT IS FURTHER ORDERED that defendant's motion to amend or withdraw requests for admissions (Docket 51) is denied as to the admissions to plaintiffs' second set of requests for admissions (Docket 46-1) numbered 1-10, 12-18, and 27-32.

IT IS FURTHER ORDERED that admission 11 to plaintiffs' second set of requests for admissions (Docket 46-1) is amended to read as follows: "That Progressive Direct Insurance Company has denied Plaintiff Andrea Hautala the underinsured motorist coverage under her policy."

IT IS FURTHER ORDERED that defendant's motion to amend or withdraw requests for admissions (Docket 51) is granted as to the admissions to plaintiffs' second set of requests for admissions (Docket 46-1) numbered 19-26, subject to the remaining terms and conditions of this order, and those admissions are withdrawn.

IT IS FURTHER ORDERED that defendant shall file its responses to plaintiffs' second set of requests for admissions (Docket 46-1) 19-26 within thirty (30) days of this order.

IT IS FURTHER ORDERED that defendant's motion (Docket 62) to bifurcate is denied.

IT IS FURTHER ORDERED that plaintiffs' second motion to compel (Docket 60) is granted.

IT IS FURTHER ORDERED that within forty-five (45) days of this order defendant shall provide answers and produce documents in compliance with the Federal Rules of Civil Procedure as follows:

A.    <u>Plaintiff's third set of interrogatories and requests for production (Docket 46-2)</u>:

- Interrogatories 1-19, inclusive;

- Requests for Production 1-37, inclusive;

- Requests for Production 38, 39, 41-44, 46-49, 56-66, and 69-74, which shall be limited to underinsured motorist coverage issues and to the time period from January 1, 1995, through January 14, 2008, the date of the filing of plaintiffs' complaint in this court.

- Requests for Production 40, 45, 50-55, 67, 68, and 75 are withdrawn and no responses are required.

B.    <u>Plaintiff's fourth set of requests of (sic) documents (Docket 46-3)</u>

- Requests for Production 1-22 and 24, which shall be limited to underinsured motorist coverage issues and to the time period from January 1, 1995, through January

14, 2008, the date of the filing of plaintiffs' complaint in this court.

- • Requests for Production 22, 23, and 25 are withdrawn and no responses are required.

IT IS FURTHER ORDERED, pursuant to Rule 37(a)(5)(A) and 37(d)(3), that plaintiffs are entitled to reasonable expenses, including attorney's fees, for responding to defendant's motion to amend or withdraw admissions and on plaintiffs' second motion to compel. Plaintiffs shall file an affidavit setting forth the reasonable expenses and time spent on these matters, attending the hearing, and all related activities, and the hourly rate requested for attorney's fees within fourteen (14) days of this order.

IT IS FURTHER ORDERED, as a condition precedent to the withdrawal of the admissions allowed by this order, that defendant pay plaintiffs' reasonable expenses, including attorney's fees, in the amount to be subsequently approved by the court, within fourteen (14) days of entry of such order.

Dated May 3, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE